**IN THE COURT OF APPEALS OF IOWA**

No. 23-1698
Filed January 23, 2025

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**SHAWN MICHAEL HAGEDORN,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Scott County, Jeffrey D. Bert, Judge.


　　A criminal defendant appeals his convictions for unauthorized use of a credit card and theft in the second degree. **AFFIRMED.**


　　Karmen Anderson, Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney General, for appellee.


　　Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Shawn Hagedorn appeals his convictions for unauthorized use of a credit card and second-degree theft. We affirm, finding his instructional challenge unpreserved and his convictions supported by substantial evidence.

**Background Facts and Proceedings.** Pamela Glynn, a Scott County retiree in her late sixties, hired Shawn Hagedorn to do odd jobs and projects around her condominium. After about a month of work, Glynn grew unhappy with Hagedorn's lack of progress, so she left a note instructing him to keep regular hours and reprimanding him for using her car without permission. Glynn also thought Hagedorn was getting too comfortable in her home. And she eventually fired him and called a friend to help make him leave.

Some weeks later, Glynn received a bank statement that had unusual charges for places she didn't go, cell-phone providers she didn't use, online gaming she didn't participate in, cash-transfer applications she hadn't heard of, and some direct transfers listing Hagedorn's name. She called her bank and discovered approximately $4000 in unexpected expenses. And she reported the fraud to the bank and police. Later, Glynn recalled an occasion she left her debit card on the counter in Hagedorn's presence and that she left him unsupervised at times. She testified Hagedorn did not have permission to use her card for any of the unexpected transactions.

Glynn also thought some of her personal property was missing from her home after Hagedorn left. She went to a pawn shop across the river in Illinois and discovered a family heirloom—a pocket watch with engraved initials—behind the counter. The pawn shop had marked the pocket watch for sale at $129.99, though

Glynn valued it at $300. The broker identified Hagedorn as the person who pawned the pocket watch, as confirmed by surveillance footage and a sales ticket with Hagedorn's name and personal information. Glynn testified Hagedorn did not have permission to take or sell the pocket watch.

Police acquired a variety of digital, financial, and forensic records as they investigated the fraudulent charges. Of particular note, records from the cash-transfer application established that Hagedorn (who used his real name, birthdate, address, and social security number) opened the account using Glynn's card number and transferred money to his own separate account. Following the police investigation, the Scott County Attorney charged Hagedorn by trial information with one count of unauthorized use of a credit card for more than $1500 and under $10,000, a class "D" felony in violation of Iowa Code section 715A.6(2)(b) (2022), and theft in the second degree, a class "D" felony in violation of Iowa Code section 714.2(2), both enhanced as a habitual offender under sections 902.8 and 902.9.

Hagedorn testified at trial, claiming Glynn authorized the transactions and that she offered to let him move in, then "got [him] drunk" and they had sex. He claimed it was after that when "things went downhill" between them and a man kicked him out of Glynn's home "at gunpoint." Hagedorn said Glynn gave him the pocket watch one of the first days he worked at her house, and he pawned it because he needed cash after she kicked him out. He said he had "no idea" what the online-gaming charges were about. And he admitted to a past theft conviction.

The jury found Hagedorn guilty as charged. He appeals, challenging the jury instructions and sufficiency of the evidence.

**Jury Instructions.** Hagedorn alleges errors in the jury instructions but candidly admits "[n]either party objected" below. A "timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error." *State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020) (citation omitted). He encourages us to "bypass" this error-preservation problem and "adopt a plain[-]error standard." We must decline. *See, e.g.*, *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021) ("We have repeatedly rejected plain error review and will not adopt it now."). Having no instructional error to review, we move to the next issue.

**Sufficiency of the Evidence.** We review sufficiency challenges for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

Hagedorn's argument boils down to a claim the jury should have believed him instead of Glynn. But "[a] criminal defendant is not entitled to acquittal merely because he wishes the jury had believed him instead of the victim." *State v. Hernandez*, No. 23-0630, 2025 WL 52424, at *3 (Iowa Ct. App. Jan. 9, 2025) (en banc). Glynn testified to all the essential elements, and this alone was sufficient to support a conviction. *See* Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required."). Here, Glynn's testimony was bolstered by the pawn broker, the surveillance footage, and various digital, financial, and forensic records. Sufficient evidence supported Hagedorn's guilt.

**AFFIRMED.**